### G. C. LEAS v. CONTINENTAL FRUIT EXPRESS.

Decided January 30, 1907.

**1.—Defective Leased Cars—Liability for Injury.**

A company engaged in the business of making cars and furnishing them to railways to be used in the transportation of freight is responsible to the employes of the railways for injuries resulting from either defective original construction or negligent maintenance. It is not necessary that privity of contract should exist between the owner of the cars and the injured employe. A manufacturer who sells a dangerously defective article must be deemed to know that it would be used and to anticipate the probable consequences.

**2.—Proper Construction of Car—Evidence.**

The question being whether or not a certain car was properly constructed the rules of a Master Car Builder's Association were competent evidence on the issue.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*W. M. Peticolas,* for appellant.—A car company owning cars specially adapted to certain freight, of a kind not owned by railways, which it habitually causes to be transported by railways for its own financial benefit, and retaining in itself the ownership and control of the cars, is jointly operating said cars with each successive railroad which carries them, and is therefore charged by law with the duty of reasonably safe construction, and with the duty of maintaining them in reasonably safe condition, and these duties it can not delegate so as to avoid liability. Philadelphia, W. & B. Ry. v. Hahn, 12 Atl. Rep., 481; Galveston, H. & S. A. Ry. Co. v. Croskell, 6 Texas Civ. App., 160; Gulf, C. & S. F. Ry. v. McWhirter, 77 Texas, 356; Missouri P. Ry. v. Jones, 75 Texas, 151; Illinois Cent. Ry. v. Finnigan, 21 Ill., 649; Chicago & R. I. Ry. v. Whipple, 22 Ill., 109; Peters v. Rylands, 20 Pa. St., 497 (8 Harris, 497); Collins v. Texas & Pac. Ry., 15 Texas Civ. App., 169; Markham v. Houston Direct Nav. Co., 73 Texas, 247; United Electric Ry. v. Shelton, 14 S. W. Rep., 863; Gulf, C. & S. F. Ry. v. Dorsey, 66 Texas, 151; Elmer v. Locke, 135 Mass., 575.

*Beall & Kemp,* for appellee.—The manufacturer or owners of cars furnished a railway company on application for the transportation of freight, can not be held liable to the employes of said railway company operating them and having the control and power of inspection, who may be injured on account of some defective conditions of said car caused

by its use. Galveston, H. & S. A. Ry. Co. v. Nass, 94 Texas, 255; East Line Ry. Co. v. Culberson, 72 Texas, 375; Cunningham v. International & G. N. Ry. Co., 51 Texas, 503; Missouri, K. & T. Ry. Co. v. Chambers, 17 Texas Civ. App., 487; Kennedy v. Embry, 72 Texas, 387; Kahl v. Love, 37 N. J. L., 5; Perez v. Rabaud, 76 Texas, 191; Edwards v. New York & H. Ry., 50 Am. Rep., 659; Freeman v. Hunnewell, 39 N. E. Rep., 1012; Texas & P. Ry. v. Moore, 8 Texas Civ. App., 289; Glynn v. Central R. R., 17 Am. & Eng. (N. S.), R. cases, 482; Sawyer v. Minneapolis & St. L. Ry. Co., 33 Am. & Eng. Ry. Cases, 394.

It was the duty of the railroad company, whose servant plaintiff was at the time he received his injury, to exercise ordinary care to furnish him with reasonably safe appliances and to maintain the same, and, if the said railroad company failed in this duty, the master was liable and not the owner of the car, as the latter had no opportunity of inspection while the car was in control and in the possession of the railway company operating the same. The owner of the car had performed its full duty when it furnished the initial railway company, to which it was delivered, a car with reasonably safe appliances and the duty of maintaining said car by proper inspection, devolved upon the railway company operating the same while on their respective lines of railroad. East Line & R. R. Ry. Co. v. Culberson, 72 Texas, 376; Cunningham v. International & G. N. R. R. Co., 51 Texas, 503; Wood on Master and Servant, sec. 281; Shear. & Red. on Negligence, sec. 73.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellant against the El Paso & Northeastern Railroad Company, the El Paso & Northeastern Railway Company, El Paso & Rock Island Company, the Galveston, Harrisburg & San Antonio Railway Company and the Continental Fruit Express, to recover damages resulting from personal injuries received through the handhold of a car coming loose and precipitating appellant to the ground. He was a brakeman in the employ of the El Paso Northeastern Railroad or Railway Company, and was in discharge of his duty when injured. The railway companies were dismissed from the suit and no complaint is made in this court of the action of the trial court in connection therewith. A trial resulted in a verdict and judgment for appellee.

The grounds of negligence were alleged as follows in the petition: "Plaintiff alleges that said handhold was defective, unsafe, insecure, and not in a reasonably safe condition for use, in this, (1) that it was fastened to said car with a lag screw; (2) that the said screw was defective, insufficient and worn out; (3) that the fastenings of said screw in the wood of said car were rotten, worn out and deficient so that said screw pulled out, and said handhold gave away with plaintiff, and plaintiff was precipitated to the ground. That said handhold should, in the exercise of ordinary care, have been fastened to said car with a bolt and nut and not with a lag screw."

It was alleged that appellee was the owner of a large number of refrigerator cars, to be used in the transportation of perishable fruits, vegetables and meats; that appellee accepted such commodities for shipment and required railroad companies along any route chosen by it to transport its cars to their destination, and requires such railroad com-

panies to pay it the sum of one cent per mile for said cars and other recompense. It was alleged: "That the car which plaintiff fell from was owned by the Continental Fruit Express, was numbered C. F. X. 10216, and was being transported at the instance of and for a consideration enuring to the Continental Fruit Express. That a part of the money arising from the transportation of said car and its contents was paid to the Continental Fruit Express; that it shared in the revenue arising from the transportation of said car; that it owned said car and caused the same to be transported over the roads herein described; that it caused such transportation for its own profit and emoluments; that it derived a revenue from the transportation of said car and its contents; that such revenue was paid to it on a mileage basis, and that is to say, if said car traveled one hundred miles on a certain railroad, it received from said railroad a certain sum per mile, if said car stood still a day it received no revenue that day; that it also derived a revenue from freights paid to it for the carriage of the contents of said car, and charged and received a revenue from icing said car, charging therefor in excess of the cost of such icing.

"That said car No. 10216 was defectively and unsafely constructed in this, that the handhold which gave way with plaintiff was fastened to said car with a lag screw instead of with a nut and bolt, and such construction is not a reasonably safe construction, is not the best construction, and is not the construction now commonly used by common carriers and is an inherently defective and dangerous construction. That the Continental Fruit Express knew, or by reasonable diligence might have known, of the construction of said car and the use of said lag screw, and it was negligence on its part to so construct said car and to so maintain and operate the same, and to cause or allow the same to be transported since it knew, or by reasonable diligence might have known, and could reasonably anticipate that said handhold would be used by its agents and employes and by the employes of its agents.

"That said defective and inherently defective construction was the direct cause of plaintiff's fall and injury, and but for such defective construction plaintiff would not have been injured. That said handhold and its fastenings were latently defective in that the wood was rotten and covered freshly with paint and plaintiff could not by reasonable diligence have learned of said defect and a reasonable and careful inspection might not have discovered it."

The court, in the instructions to the jury construed the pleadings to charge negligence only in the original construction of the car, and instructed the jury: "Now, therefore, if you believe from the evidence that the said handhold was fastened to the side of said fruit car 10216 owned by the defendant, the Continental Fruit Express by a lag screw and that such lag screw gave way or pulled out of the side of said car, and that plaintiff was thereby precipitated to the ground and injured, as alleged by him, and that to have furnished said car with its handholds fastened to the side of same with a lag screw instead of with nut and bolt, was negligence on the part of the said Continental Fruit Express, and that such negligence, if any, was the proximate cause of said handhold giving way and plaintiff being precipitated to the ground and injured, as alleged, then and in that event your verdict should be for the plaintiff,

but unless you do so believe your verdict should be for the defendant, the Continental Fruit Express."

The following instruction was also given at the request of appellee: "The defendant company did not owe the duty to the plaintiff to furnish the safest appliances to protect him from injury, but only to exercise ordinary care to furnish him, reasonably safe appliances; and if you believe from the evidence that cars originally constructed with lag screws were reasonably safe for the use intended, your verdict will be for the defendant, notwithstanding, you may believe said car was by use rendered defective, and the wood rotten to such extent that the lag screw pulled out, and caused plaintiff's injuries."

The court proceeded either upon the theory that appellant had in his pleadings alleged negligence only in the original construction of the car, or that appellee was not liable for the subsequent condition of the car if it had used reasonable care in the original construction of it. We think the petition sufficiently alleges not only that the car was defectively constructed, but that the handhold of the car had become defective after its construction, and that while in that condition it had been furnished to the employes of the railway companies.

It was disclosed by the facts that appellee is a corporation owning what is known as "refrigerator cars;" that when applied to it furnished cars in which to transport perishable fruits, vegetables and meats; that it had the only cars that could be used for such purposes and the railway companies were compelled to use its cars and pay it one cent a mile for every mile that the car was transported. It had its headquarters in Los Angeles, California, and in that city furnished the car to the Southern Pacific Company on which appellee was afterwards injured by a defective handhold on the car. The car was freshly painted when it reached El Paso, Texas, and must necessarily have been in that condition when it was furnished to the Southern Pacific Company at Los Angeles.

Appellee was engaged in furnishing its cars to railway companies to be used by them in the transportation companies and it was charged with the knowledge that the cars would be used in the ordinary mode by the employes of those companies. It knew that in transporting the cars it would become necessary for men to ascend and descend the cars and it constructed its cars with ladders, stirrups and handholds to enable them to carry out that necessary feature of their employment. When it assumed the duty and responsibility of furnishing the cars, it assumed the duty towards all who might, in furtherance of the business of those to whom the cars were furnished, be engaged with the cars, not only to use ordinary care to construct the cars so as to make them safe, but from time to time, as the cars might be furnished to others, to use ordinary care to see that they are in a safe and suitable condition for use. The cars were not only to be properly constructed, but to be kept in that condition.

It can not be reasonably contended that appellee would not have been liable for injuries to the employes of any railway company for the faulty construction of its cars, and no reason can be given why it should not be liable for damages arising from a car that had become defective after it had been constructed. In both instances the car is defective,

and in both instances the liability would attach. A contrary view would relieve the builders and owners of cars from any kind of inspection of its cars and place that duty upon someone else. Such a theory can not be sustained.

It was not necessary that privity of contract should exist between appellant and appellee in order to fix its liability to him. It knew that many men would use its cars and it owed each and every one of them a duty whether contractual relations existed between them or not. The question is, Would injury naturally follow from using the handhold furnished by appellant in the manner it was designed to be used, by one working in the line of his duty? If so it was a neglect of duty resting upon appellee, under the law independent of any contract. Wellington v. Downer; 104 Mass., 64; Thomas v. Winchester, 6 N. Y., 396; Bishop v. Weber, 139 Mass., 411; Norton v. Sewall, 106 Mass., 143; Loop v. Litchfield, 42 N. Y., 351; Schubert v. Clark (Minn.), 15 L. R. A., 818.

In the last named case, the plaintiff was a house painter and engaged in working at his trade, in the employment of one Phelps. The employer ordered a stepladder from a merchant directing that it be delivered to the plaintiff at the place where he was at work. The merchant not having such a ladder, ordered the defendant corporation to deliver such a stepladder to plaintiff, which was done. The plaintiff proceeded to use the ladder in the performance of his work, and while he was standing on it, it broke and caused him to fall and injured him. The court discussed a number of cases and held the corporation liable for the damages.

The court said: "When the defendant manufactured and put the dangerously faulty article in stock for sale, it is to be deemed to have anticipated that, in the ordinary course of events, it would come to the hands of a purchaser, either directly from the defendant or from some intermediate dealer, for actual use, and with the consequences which actually were suffered. It must have been deemed probable that any intervening dealer would not discover the defect, and that nothing would be likely to occur to avert the danger to which the person who might use the ladder would be subjected by the defendant's negligence. Hence it would be difficult to distinguish such a case in principle from one where the transaction is directly between the wrongdoer, then knowing the danger, and the party who is injured. If any distinction is to be made it must rest upon grounds of expediency, the arbitrary fixing of a limit to liability to the liability of the wrongdoer. But we consider that in principle the defendant should be held to responsibility for an injury resulting proximately, and without any intervening wrongful agency, from its confessedly negligent act, which was such as to expose another to great bodily harm; and that no reason of policy forbids this."

That decision goes far to sustain our opinion in this case, for in this case appellant was employed in connection with a car rented to the railway company, and was engaged in a duty that appellee knew that he or others would be engaged in with the car. The car was the property of appellee and had only a short time before left the hands of its owner painted and with the appearance of being in a good state of repair. Appellee should have anticipated that appellant or some other person would be injured by the defective handhold just as he was injured. Appellee

owed the duty to furnish a reasonably safe car to each and all the employes of the roads that might use its cars, and if there was no active intervening cause between the negligence of appellee and the injury to appellant, it must be held liable for the damages.

In the English case of Heaven v. Pender, 11 Q. B. D., 506, copied in Whitaker's Smith on Negligence, p. 14 *et seq.* the plaintiff was a painter in the employ of Gray, a ship painter, who had a contract with a ship owner to paint his ship. The defendant supplied, under a contract with the ship owner, a stage to be slung outside the ship for the purpose of painting it. The ropes by which the stage was slung had been weakened by being scorched. When plaintiff began to use the stage the ropes broke, the stage fell, and he was injured. The court held the defendant liable for the damages arising from the injuries inflicted on the plaintiff by the fall. The court said: "The proposition will stand thus: whenever one person supplies goods or machinery, or the like, for the purpose of their being used by another person, under such circumstances that every one of ordinary sense would, if he thought, recognize at once that, unless he used ordinary care and skill with regard to the condition of the thing supplied or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying it. And for a neglect of such ordinary care or skill whereby injury happens, a legal liability arises to be enforced by an action for negligence."

The English case of Winterbottom v. Wright, 10 Mass. & Wels., 109, which may seem adverse to our opinion, was one in which a servant had sued a manufacturer for damages incurred by reason of defects in a mail coach furnished to his employer by said manufacturer, who had agreed with the employer to keep the coach in good order. The servant declared on the contract and the court held that the contract between the manufacturer and the employer did not enure to the benefit of the servant. The trial court sustained demurrers to the declaration. The judge rendering the opinion said: "Unless we confine the operation of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue. Where a party becomes responsible to the public by undertaking a public duty, he is liable, though the injury may have arisen from the negligence of his servant or agent." In the case under consideration the suit is not based on contract, but on the public duty assumed by appellee to furnish safe appliances.

The case of Heizer v. Kingsland Mfg. Co., 15 L. R. A., 821, apparently seems also to sustain a contrary view to our opinion herein expressed. In that case, however, there seems to have been a declaration by the wife of a servant, who had been killed through a defect in machinery sold by the defendant, a manufacturer, to the employer of the dead man. The court held that there was no privity of contract between the servant and the manufacturer, but quoted approvingly the following language from Whitaker's Smith on Negligence, 10: "The question always is, Has the defendant committed a breach of duty apart from the contract? If he has only committed a breach of contract he is liable to those only with whom he has contracted; but if he has com-

mitted a breach of duty he is not protected by setting up a contract in respect of the same matter with another person." And it was further said: "Had defendant sold this machine to Ellis, knowing that the cylinder was defective and for that reason dangerous, without informing him of the defect, then the defendant would be liable even to third persons, not themselves in fault." The court found that it could not be inferred that the defendant knew that the machinery was dangerous, as it appeared that the machinery may have been made by those from whom defendant had bought the business. In the case now under consideration, appellee is chargeable with a knowledge of the defective condition of the car.

It is not necessary for this court to go to the extent of some of the cases which hold the manufacturer liable for defective constructions of their goods to every one, because that is not demanded by the facts of this case. The car in this instance was the property of appellee, and was being used by it in the shipment of fruit, and it was while it was being used for the purposes for which it had been constructed by appellee, that appellant was injured. It appears that the railroad companies were compelled to use the cars of appellee in the shipment of fruit, and although the duty of inspection devolved on them, that did not relieve the owner of the cars from the duty of keeping the cars in repair. The car had been painted only a short time before the accident, presumably by appellee, and the defects should have been discovered and remedied. Instead they covered them with paint so that appellee and other employes could not discover them.

Appellee occupies a novel position towards the railway companies, in that it holds a monopoly of the cars in which perishable fruits and vegetables can be shipped, and dictates its terms to them in the shipment of such commodities. It constructs the cars, is responsible for the manner of their construction, and on it devolves the duty of keeping its cars in repair, and to it persons injured through defects in its construction can look for redress. It may be a liability jointly with some one else, but it is liable, at least for all damages resulting from defects that existed when the car was furnished for the particular journey in the condition that it was when the injury took place, and this is the case under consideration.

We do not think that the railway companies were the agents of the appellee in the transportation of its cars but rather that it occupies the position towards them analogous to that a livery stable keeper would occupy to those renting or hiring vehicles from him. The man rents a carriage or wagon from the livery stable keeper and employs a man to drive it, the vehicle is defective and the servant is hurt by reason of such defect. Who would be liable? The master might be liable, but undoubtedly the livery stable keeper would be liable also, although the master is not the agent but the lessee of the owner of the vehicle. Should the livery stable keeper be the manufacturer as well as owner of the vehicle, the responsibility is increased. There would be an implied warranty not only that reasonable care had been used in the construction of the vehicle, but that care had been exercised to keep it in a state of good repair, for the uses for which it was intended and is used. We see no difference between that case and this. The Fruit Express Com-

pany had cars to rent to railroads to transport fruits, in fact they were the only ones that could be rented for that purpose, and there arose a duty to all employes of those renting the cars to furnish cars in whose construction reasonable care had been exercised, and in the keeping of which cars care had been exercised, and when it fails to exercise such care, it will be liable to one who in pursuance of his duty is using such car.

The rules of the Master Car Builders' Association were properly admitted in evidence as tending to show the proper construction of the car. The evidence should be confined to that object, and no doubt would have been so limited in this instance if appellant had asked it, as he should have done.

For the errors specified the judgment is reversed and the cause remanded.

*Reversed and remanded.*