## Continental Fruit Express v. G. C. Leas.

### Decided May 6, 1908.

**1.—Continuance—Discretion of Court.**

When a motion to postpone a trial to a future day of the term is addressed to the discretion of the court, the action of the court will not be revised on appeal unless it is apparent that the court abused its discretion. Motion to postpone a trial because certain depositions had not been received, considered and held insufficient in the matter of diligence,

**2.—Parties—Joint Tort Feasor—Recovery Over.**

A company which rents defective refrigerator cars to a railroad company and is jointly interested in and shares with the railroad company the profits of operating the cars, is a joint tort feasor with the railroad company, and each is severally liable for injuries resulting from the use of such cars. No right of recovery over exists as between such parties.

**3.—Master and Servant—Personal Injuries—Liability of Third Parties.**

One who furnishes defective cars to a railroad company can not evade responsibility for injuries thereby resulting to an employe of the railroad company by a contract with the company, to which the employe was not a party, that the company alone should be responsible.

**4.—Railroads—Defective Car—Liability.**

Ordinarily, when a defective car has been received by a connecting railroad to be hauled over its line, the owner's responsibility for a defect, which is not secret, ceases after the connecting road has had full control over it and an opportunity to inspect it. One railroad is not responsible for a defect in a car of another railroad which a proper inspection would not discover. A proper inspection is the whole duty of a connecting line.

**5.—Same—Non-contractual Liability.**

Whenever one person is by circumstances placed in such a position with regard to another that every person of ordinary sense will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.

**6.—Personal Injuries—Defective Handhold—Charge.**

In a suit for personal injuries caused by a defective handhold upon a freight car, charge considered and approved.

ON MOTION FOR REHEARING.

**7.—Joint Tort Feasors—Evidence.**

Evidence considered and held sufficient to sustain a finding that a company which rented refrigerator cars to a railroad to be used in the transportation of freight, was engaged with the railroad company in operating the car and shared in the profits of the business.

**8.—Negligence—Handhold—Construction—Evidence.**

The question whether or not the fastening of a handhold upon a freight car with lag-screws instead of with bolt and nut, was negligence, was one of fact for the jury, in a suit for damages for personal injuries resulting from the giving away of a handhold fastened with lag-screws. Evidence considered and held sufficient to support a finding that the use of lag-screws for such purpose was negligence, the approval of lag-screws by an association of master car builders to the contrary notwithstanding.

Appeal from the 41st Judicial District, El Paso County. Tried below before Hon. J. M. Goggin.

*Beall & Kemp,* for appellant.—The court erred in refusing to give the defendant's special charge, as follows: "The Continental Fruit Express is the only defendant on trial before you, and as the evidence does not justify you in finding against the defendant, you are instructed to return a verdict for the defendant." Because the undisputed evidence showed that the Continental Fruit Express was not a common carrier, but merely furnished cars to railroad companies; that the plaintiff at the time of his injury was in the employ of the railroad com-

pany that was hauling said car; that the car at the time he was injured had passed entirely from the control of this defendant, and was in the hands and under the control of the carrier employing the plaintiff; and that this defendant was not liable to the plaintiff for damages resulting either from any defect existing in the original construction of the car with respect to the handhold, or from a want of care in regard to the inspection or keeping said handhold in a reasonably safe condition. Galveston, H. & S. A. Ry. Co. v. Nass, 94 Texas, 255; East Line & R. R. Ry. Co. v. Culberson, 72 Texas, 375; Cunningham v. I. & G. N. Ry. Co., 51 Texas, 503; Missouri, K. & T. v. Chambers, 17 Texas Civ. App., 487; Kennedy v. Embry, 72 Texas, 387; Kahl v. Love, 37 N. J. L., 5; Perez v. Rabaud, 76 Texas, 191; Heindirk v. Louisville Elev. Co., 92 S. W., 608; Gulf, C. & S. F. Ry. Co. v. Sliger, 100 S. W., 957; Galveston, H. & S. A. Ry. Co. v. Parish, 93 S. W., 682; Huset v. Case Threshing Machine Co., 61 L. R. A., 305; Goodlander Mill Co. v. Standard Oil Co., 27 L. R. A., 583; Bragdon v. Perkins-Campbell Co., 87 Fed., 109; Loop v. Litchfield, 42 N. Y., 351; Losee v. Buchanan, 51 N. Y., 491; Heizer v. Kingsland Mfg. Co., 110 Mo., 605; Burke v. DeCastro Sugar Ref. Co., 11 Hun, 354; Barrett v. Singer Mfg. Co., 1 Sweeny, 545; McCaffrey v. Mossberg Mfg. Co., 23 R. I., 381; Case Plow Works v. Niles & S. Co., 90 Wis., 590; Edwards v. New York & H. Ry. Co., 50 Am. Rep., 659; Freeman v. Hunnewell, 39 N. E., 1012; Texas & Pac. Ry. v. Moore, 27 S. W., 962; Glynn v. Cent. R. R. Co., 17 Am. Eng. (N. S.) R. R. Cases, 482; Sawyer v. Minneapolis & St. L. Ry. Co., 33 Am. & Eng. Ry. Cases, 394.

The owner of cars furnished a railway company on application for the transportation of freight in consideration of one cent a mile to be paid as rental while said car is in use by said railway company, is not liable to the employes of said railway company operating said car having the control and power of inspection, who may be injured on account of defective conditions of said car caused by its use. Same authorities.

It was the duty of the railway company, whose servant plaintiff was at the time he received his injury, to exercise ordinary care to furnish him with reasonably safe appliances, and to maintain the same, and if the said railroad company failed in this duty, the master was liable to its servant so injured through its negligence, and the owner of the car who rented the same to the railway company was not liable to plaintiff, because said owner had no opportunity of inspecting the car while under the control and in the possession of the railroad company operating the same. The duty of maintaining said car with reasonably safe appliances by proper inspection, devolved upon the railroad company which received and operated it on its line of railroad. East Line Ry. Co. v. Culberson, 72 Texas, 375; Galveston, H. & S. A. Ry. Co. v. Nass, 94 Texas, 255; Cunningham v. I. & G. N. Ry. Co., 51 Texas, 503; Missouri, K. & T. Ry. Co. v. Chambers, 17 Texas Civ. App., 487; International & G. N. Ry. Co. v. Kernan, 78 Texas, 297; Jones v. Shaw, 41 S. W., 693; Glynn v. Cent. R. R. of N. J., 17 Am. and Eng. R. R. Cases (new series), 483; Elmer v. Locke, 135 Mass., 575; cases cited, Clifford v. Atlantic Cotton Mills, 146 Mass., 47; Sawyer v. Minneapolis & St. L. Ry. Co., 38 Minn., 103.

*W. M. Peticolas* and *T. A. Falvey,* for appellee.—A car company which owns large numbers of patented "refrigerator cars," which it maintains in "parks" at various points in the United States, which is engaged (for its own financial profit) in the business of compelling railroads to use said cars on payment of mileage to it and on condition that it will be allowed to make a profit by icing the cars; which controls the transportation of said cars and directs when and how they shall be carried; which employs agents to report the arrival and departure of said cars, which employs travelling agents to "hustle the cars along," which sends men with the cars; which knows when the cars start that they will be handled by railway employes; which knows that the cars are dangerous instrumentalities, is charged with the duty of original safe construction and safe maintenance and is jointly liable with the railroad whose employe is injured either by unsafe construction or by unsafe maintenance. Leas v. Continental Fruit Express, 45 Texas Civ. App., 162; Pennsylvania Ry. v. Snyder, 55 Ohio St., 342; 60 Am. St. 700; 45 N. E., 559; Schubert v. Clark, 51 N. W., 1103; 15 L. R. A., 818; 32 Am. St., 559; Peters v. Rylands, 20 Pa. St., 497; Jackman v. Arlington Mills, 137 Mass., 283; Wellington v. Downer, 104 Mass., 64.

If Continental Fruit Express owes a duty of safe construction and maintenance and neglects either and an injury occurs as in this case, its negligence would have contributed to the injury although the railroad might also be negligent in not discovering and remedying the defect. The causal connection is not broken if the intervening event is one which might, in the natural course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation. Markham v. Houston Navigation Co., 73 Texas, 247; Gulf, C. & S. F. Ry. v. McWhirter, 77 Texas, 356; Galveston, H. & S. A. Ry. v. Croskell, 6 Texas Civ. App., 160; Elmer v. Locke, 135 Mass. 575.

NEILL, ASSOCIATE JUSTICE.—The pleadings and the nature of this case are fully stated in the opinion of this court delivered on a former appeal, which is reported in 45 Texas Civ. App., 162, and need not be repeated. We will add that the plaintiff dismissed as to the railway companies and that the appellant filed its plea and cross-action against its co-defendant, the El Paso & Rock Island Railway Company, charging said company with a failure of its duty to properly inspect the car from which the plaintiff fell and was injured, and prayed, in event judgment was recovered against it, that it have judgment over against said railway company for the amount recovered. A demurrer of the railway company was sustained to appellant's cross-action, and the case was tried before a jury and resulted in a judgment in favor of plaintiff against appellant for $3,000, from which it has appealed, as well as from the judgment against it in favor of its codefendant, the El Paso & Rock Island Railway Company, dismissing appellant's cross-action.

*Conclusions of Fact.*—On January 28, 1905, the plaintiff, while in the employ of the El Paso & Northeastern Railway Company as a

brakeman upon one of its freight trains and discharging the duties of his employment in descending a ladder on one of the cars, the handhold which he had grasped pulled out of the car and he was thrown to the ground by reason thereof and his hand was run over, and mashed and had to be amputated in consequence. The car from which he fell by reason of the giving way of the handhold belonged to and was being used in the service of the Continental Fruit Express, a corporation engaged, with the railway companies who were joined in this suit as appellant's codefendants, in carrying fruit and perishable goods in cars owned and furnished by it to the railroads for carrying on the business in which it and the railroad companies were engaged. The handhold which pulled out was fastened to the side of the car with a lag-screw instead of with a bolt and nut, which the exercise of ordinary care required. The fastening with lag-screws instead of with bolt and nut was negligence on the part of the appellant, the wood around the lag-screws in which they were embedded being rotten, rendering the fastening thereby of the handhold defective and insecure and covered with paint so that the defect was concealed and could not be discovered by the railway companies and its employes operating said car. Such defect in the fastening of the handhold existed when the appellant delivered the car to the railway companies to be used in carrying on the business in which it and said railways were engaged, and appellant knew or was charged with knowledge thereof. The appellant knew that the car with the defective handhold would be operated, and intended that it should be so operated, by the employes of the railway companies when it delivered it for their use, and could have reasonably anticipated at the time that an employe engaged in running a train in which such car was placed might be injured in the way plaintiff was by reason of the defective and insecure fastening of the handhold; that the appellant was guilty of negligence in delivering said defective car to said railway companies, and in using it in the business it was engaged in with them and such negligence was the sole and proximate cause of plaintiff's injuries whereby he was damaged in the amount found by the jury.

*Conclusions of Law.*—1. The first assignment of error insisted upon, is that which complains of the action of the court in overruling appellant's motion to postpone the trial for the purpose of enabling it to procure the testimony of certain witnesses who resided in other States, to whom it had propounded interrogatories and caused commissions to be issued and placed in the hands of the proper officers for the purpose of having their depositions taken to be used as evidence upon the trial. The motion was such as invoked the exercise of the discretion of the court, and, unless it is apparent that its action upon it was an abuse of such discretion, it can not be reviewed on appeal. Neyland v. Texas, etc., Lumber Company, 26 Texas Civ. App., 417. Therefore the question to be determined is, was there a manifest abuse of this discretion? It does not appear from the record before us when this suit was filed, as it would had rule 13 of the District Court been observed by plaintiff's counsel when he filed his second amended original petition, upon which the case was tried. But such amended petition was filed November 22,

1905, and charged appellant with the acts of negligence upon which plaintiff relied for a recovery in this action. If not before, appellant then knew what allegations the plaintiff based his right of recovery upon and that it would have to meet and defend against them: for if the amended petition disclosed a cause of action, appellant can not excuse itself from its failure to prepare its case for trial upon the issues of fact by saying: "I did not think the matters alleged constituted a cause of action against me, and relied upon the court's sustaining my demurrer to the petition, and consequently made no preparation for trial upon the issues of facts until my demurrer was overruled and it was judicially determined that the plaintiff had alleged a cause of action." If this were an excuse, misapprehension on the part of defendant of the law as to what it takes to constitute a cause of action, would always prevent a cause from being tried upon the facts, until he became enlightened by the court's overruling his demurrer to plaintiff's petition. The presumption that everyone knows the law, though a pure fiction, must be acted upon in the administration of justice as though it were absolutely true. The defendant not only knew on November 2, 1905, what allegation the plaintiff relied upon to make out its case, but knew then, as well as it did at any time afterwards, what facts it could prove in defense, and the names and residences of the witnesses by whom it could prove such defensive matters. Yet, it did not inform its counsel at El Paso, charged with the conduct and management of its defense, of the facts it could prove, nor the names and residences of the witnesses, until after the case was once tried and the judgment in its favor reversed on appeal and the cause remanded to the District Court for a new trial, and not then, until four months after the judgment was reversed and it knew the case would again be tried in the District Court. In view of these matters, it seems to us there was such a lack of diligence on the part of the defendant in preparing its case for trial, that it can not be said the trial court abused its discretion in overruling its motion to postpone the trial. Hicks v. Porter, 85 S. W., 437; Galveston, H. & S. A. Ry. v. Walker, 76 S. W., 228; Ley v. Hahn, 81 S. W., 354; McMahan v. Busby, 29 Texas, 195; Green v. Crow, 17 Texas, 182; Hogan v. Burleson, 25 Texas Supp. 36; Watson v. Blymer Mfg. Co., 66 Texas, 558; Stith v. Moore, 95 S. W., 587; Falls Land Co. v. Chisholm, 71 Texas, 523. Though the depositions for which the postponement was asked were returned and filed before the term of the court at which the case was tried had expired, as is shown probable from the application for continuance, this did not tend to disprove the statement of the trial judge, made in ruling upon the motion, that to grant it would be tantamount to a continuance to the next term; for the trial of other cases on the docket may have in fact required all the time remaining of the term.

2. The court did not err, as is complained in the second assignment of error, in sustaining the demurrer of the El Paso & Rock Island Railway Company to appellant's cross-action to recover damages over against said company. If the appellant was jointly interested in and shared with the railway companies the profits of operating the defective car which caused plaintiff's injuries, as is alleged in his petition, it was a joint tort feasor with its codefendant and was as much,

if not more, responsible for the negligence which was the proximate cause of his injury as the railway company over whose track the car was being operated; and the appellant was therefore not entitled to recover over against its co-defendant damages recovered against it for an injury caused by a wrong in which its participation concurred in producing. Galveston, H. & S. A. Ry. Co. v. Nass, 94 Texas, 255; North Texas Traction Co. v. Caldwell, 99 S. W., 869. If, however, there was error in the court's sustaining the exceptions of the El Paso & Rock Island Ry. Co. to appellant's cross-action, it was a matter between appellant and its codefendant, and can not affect the rights of the appellee. City of San Antonio v. Pizzini, 95 Texas, 1; Galveston, H. & S. A. Ry. Co. v. Croskell, 6 Texas Civ. App., 160.

3.    The third assignment of error complains that the court erred in refusing an instruction requested by the appellant peremptorily charging the jury to return a verdict in its favor. The propositions asserted under this assignment beg the question by assuming, as undisputed facts, that the appellant was not a common carrier, but merely rented its cars to railroad companies to be operated over their respective lines of railway under an agreement that they were to be operated under the rules established by the Master Car Builders' Association, which require each railway to inspect such cars, and in case they or any appliances thereof are found defective or out of repair, to repair the same so they might be safely used and handled by the employes of the railway company, and in the event any of the cars should become defective or out of repair in its appliances through the negligence of the railway company, and one of its employes sustain an injury in consequence thereof while such car is being operated on its line of railway, the liability was fixed upon the railway company so negligently failing to inspect and repair said car, and the owner of the car exonerated from any liability for damages to the servant or employe of such railway company. Upon these assumptions, contained in the first proposition, is predicated the second, which asserts that if it was the duty of the owner of the car to provide for its inspection and repair any defect in its appliances arising from its use after it passed from its control into the hands of the railway company, still, as the undisputed evidence shows the car was inspected before it was received by the railway company operating it, by competent inspectors, it would not be liable to plaintiff, because the negligence of the servant of the railway company in failing to make a proper inspection, was the proximate cause of plaintiff's injury.

We can not perceive how a servant of one of the railway companies could be affected by the agreement or understanding between the railroads and the appellant to operated the latter's cars under the rules established by the Master Car Builders' Association, or by the failure of either to comply with an agreement the servant was not a party to; had no interest in and had no means of enforcing. If there was such an agreement it affected only the parties to it, and neither its observance nor violation would relieve either from liability to such servant for an injury caused by its negligence, or by the concurrent negligence of both. So we will take no further notice of the agreement between the appellant and the railroads in operating the former's cars than to

observe that it appears, from the fact that it was made, that it was interested in the operation of its cars by the railroad companies, and that it sought to prescribe and control the manner of their operation by contract, prescribing certain rules for their operation, and to fasten the liability upon the railroad company for an injury to its servant caused by its negligent failure to comply with such rules. It may also be remarked that the agreement only seeks to fix the liability of the railroad for an injury to its servant caused when the car was being operated over its line of railway by its becoming defective or out of repair in its appliances through the negligence of such railway company and its failure to inspect and repair it, and does not undertake to fix the liability for an injury to a servant caused by defect in the car or its appliances which existed before it was received by such railway company or did not arise from its negligence. These, however, are matters which do not affect the plaintiff, for the liability of the respective parties to him must be determined by the law, and not by an agreement between other parties.

While it is apparent from the facts in this case that the relation of master and servant did not exist between the appellant and the appellee, and that the former, strictly speaking, owed the latter no duty arising from such relation, and while it can make no difference in this particular case, so far as the rights of the parties are concerned, whether the appellant, in the strict sense of the term, be regarded as a common carrier or not, still it does not follow that it owed no duty to the appellee as a servant of the railway company while operating its cars. A liability must rest on some one for damages to a railway employe, who, in the discharge of the duties of his employment, is required to work on a car, which does not belong to his employer, but which it is compelled to place in a train and haul over its line of road (if the defect in it can not be discovered by a proper inspection by the railroad) and who is injured by reason of its defect, resulting from the negligence of the owner either in its construction or from its failure to exercise ordinary care to have it in a reasonably safe condition for use when delivered to the railway company to be carried over its line of road, when a proper inspection by the railway company has failed to discover such defect. This liability should be upon that one whose breach of duty to the railway's employe has proximately caused his injury. Ordinarily, when a defective car has been received by a connecting road to be hauled over its line, after the connecting road has had the chance to inspect it and has full control over it the owners' responsibility for a defect which is *not secret* ceases. Missouri, K. & T. Ry. Co. v. Merrill, 59 L. R. A. 714. For the consequences of a defect which can not be discovered by the connecting road by proper inspection when it receives the car or while it is in its possession, such connecting road is not ordinarily liable; for in making such inspection, it has performed its whole duty. Such an inspection was made of the car, the defect of which caused plaintiff's injuries, when it was received from its connecting road by the El Paso & Northeastern Railway Company, in whose employ plaintiff was when injured in consequence of such defect, and the inspection failed to disclose the defect because, as the evidence shows, it was concealed by a covering of fresh

paint. It was shown that a like inspection was made by the company that received the car from appellant as well as the road which delivered it to the one plaintiff was working for, and failed to reveal the defect which caused the accident. This excludes any liability on the part of any of the railway companies; and if the negligence which caused the accident is traced to the owner of the car no reason can be perceived why it should not be held responsible for its consequences. In the opinion in Heaven v. Pender, L. R. 11 Q. B. Div. 503, 52 L. J. Q. B. N. S. 702, 49 L. T. N. S. 357, 47 J. P. 709 per Brett, M. R., after discussing a number of cases for the purpose of deducing the principle upon which the noncontractual liability for negligence rests, it is said: "The proposition which these recognized cases suggest, and which is, therefore, to be deduced from them, is that whenever one person is by circumstances placed in such a position with regard to another that everyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." The reports in which the opinion appears are not accessible to us, and we have made the quotation from a note to the case of Cleveland, C. C. & St. L. R. Co. v. Berry, 46 L. R. A. 41. It seems to us, as we held on the prior appeal, that the principle, thus enunciated by one of the most learned and philosophical jurists of his time, is directly applicable to the case under consideration. The appellant had practically a monopoly of cars suitable for the shipment of fruit or perishable goods, in which it was protected by a patent right—a monopoly of such character that railroad companies, in order to discharge their duties to the public as common carriers, were forced to accept appellant's own terms in procuring the cars for the transportation of the kind of freight for which they were designed and alone were suitable to carry. While the law compels railway companies to carry such freight, it, by virtue of a patent-right, places the control and ownership of the only kind of cars in which it can be transported in the appellant and companies like it, and without attempting to regulate them, as it does the railroads, leaves the owners of such cars free to prey upon the public by prescribing its own terms and conditions to the railway companies for their use—a power more withering and blighting to the interest of the fruitgrower than a killing frost in June. Under the guise of a contract for hiring its cars to railway companies, it shares with them in the freight for every mile it is carried in its cars over their lines of railway; and reserves the sole right of icing the cars loaded with perishable goods while en route to their destination at an enormous profit to itself, the railway companies being used as its agent to collect from the owner of the goods appellant's pro rata share of the freight and its charges for icing the cars. Such a company exercises all the functions and enjoys all the privileges of a common carrier, while it seeks by contract with the railroads who haul the cars to avoid its liabilities. In short, by circumstances brought about by its own creation, the appellant has placed itself in such a position with regard to the servants of railways operating their trains that it absolutely knows that if it does not use ordinary care and skill in regard

to furnishing cars reasonably safe to be operated, it will cause danger of injury to the servants of the companies operating such trains. Hence, its duty to use ordinary care and to avoid such danger—a duty that the law charges it with, and which it can not avoid by contract with the railroad companies. It is enough that it is given a monopoly in the only kind of cars that can be used by railroad companies in transporting perishable goods; but it can not be granted immunity from negligently taking the lives and lopping off the limbs of railway employes engaged in its service while handling its cars and carrying freight in which it shares the profits. The operation of these cars was, in fact, as shown by the evidence, the appellant's business, and the plaintiff, though not its servant by contract, was engaged in furtherance of its business when he was injured, and the duty of appellant to him while in its service was as that of a master to his servant engaged in like employment. Leas v. Continental Express, 45 Texas Civ. App., 162; Pennsylvania R. Co. v. Snyder, 55 Ohio St., 342, 60 Am. St., 700; Schubert v. Clark, 51 N. W. 1103, 15 L. R. A. 818; Philadelphia, W. & B. Ry. Co. v. Hahn, 12 Atl., 479.

4. The fourth assignment of error complains of the sixth paragraph of the court's charge, which is as follows:

"Now, therefore, if you believe from a preponderance of the evidence that plaintiff, while engaged in the discharge of his duty as brakeman on said train, grasped a handhold or grab-iron on a car belonging to said defendant, the Continental Fruit Express Company, as alleged by him, and that as alleged the said handhold or grab-iron gave way and he was thrown to the ground and injured without contributory negligence on his part; and you further believe from a preponderance of the evidence that the defendant, the Continental Fruit Express, did or omitted to do either one or both of the following acts or things as charged in the petition, viz.: That it fastened said grab-iron or handhold, which gave way, to the car with a lag-screw instead of with a nut and bolt, or that having so fastened said grab-iron or handhold to the side of the car with a lag-screw instead of with a nut and bolt, it failed to keep the same in a reasonably safe state of repair, but permitted the wood in which the lag-screw was embedded to become rotten and soft, and failed to repair the same and make the same reasonably safe for use by brakemen, and if you further believe that such act or omission, that you find to have been so done or omitted, if any, was or were the proximate cause of said handhold giving way with plaintiff, if it did, and his being thrown from the train, and his hand run over and crushed, and that the said Continental Fruit Express, by reason of such act or failure on its part, or both, was guilty of negligence, and that such negligence, if any, was the proximate cause of said handhold so giving way, and plaintiff's injury, then and in that event you will return a verdict for the plaintiff, but unless you so believe you will return a verdict for the defendant."

The charge presents the law arising from the pleadings and evidence as enunciated in our opinion on the prior appeal (45 Texas Civ. App., 162), and we can perceive no reason for not adhering to it. We will add in disposing of the fifth assignment, that the question of whether

the use of the lag-screw was negligence was one of fact for the jury to determine. The opinion of this court in El Paso & S. W. Ry. Co. v. Foth, 45 Texas Civ. App., 275, upon the question, which was approved by the Supreme Court (101 Texas, 133), is authority for submitting such issue to the jury. This also disposes of the seventh assignment of error.

5. The sixth assignment of error is also directed against the sixth paragraph of the court's charge. Here it is contended that it was the duty of the railway company, whose servant plaintiff was when he was injured, to exercise ordinary care to furnish him with reasonably safe appliances and to maintain the same, and if it failed in this duty it was liable to its servant for an injury caused by its negligence, and the owner of the car who rented it to the railway company was not liable, because it had no opportunity of inspecting the car while under the control and in possession of the company operating the same. That this contention can not be maintained is, we think, demonstrated by what we have said in disposing of the third assignment of error, and we deem further discussion of the question unnecessary.

6. As the evidence in this case shows that the lag-screw by which the handhold was fastened pulled out on account of the wood being rotten, and that as it could not have rotted during the time between when the car was delivered to the defendant railway companies and when the accident occurred, it must necessarily have been in such defective condition when appellant turned it over to the railroads for use, and the rotten wood being covered with paint so as to conceal such defect, the evidence was not such as the special charge, the refusal of which is complained of by the eighth assignment of error, could be predicated upon. Therefore the court did not err in its refusal. It may here be remarked that the special charge concedes- that it was appellant's duty to exercise ordinary care to furnish the car with reasonably safe appliances.

7. Nor was there error in the court's refusal of appellant's third special instruction; for if the defect in the car when it was delivered to the railway companies was such as could not, on account of being covered with paint, be discovered by a proper inspection by the railroads, the failure of the inspector of Galveston, H. & S. A. Ry. Co. and of the El Paso & N. E. Ry. Co. to discover such concealed defect would not exonerate the appellant from the consequence of its negligence in furnishing the railroads with a defective car; for in that event, its negligence in furnishing such a car would be aggravated, rather than disproved, by the inability of the railroads to discover such defect by making the proper inspection.

8. What we have said in disposing of other assignments demonstrates that appellant's sixth special charge does not enunciate the law applicable to this case, and that it was properly refused.

9. The testimony of the witness Schourup, the admission of which is complained of by the eleventh assignment, was admissible as the opinion of an expert upon the issue as to whether the appellant had exercised ordinary care to adopt a reasonably safe method of fastening the handholds upon its cars. El Paso & S. W. Ry. v. Foth, *supra*.

10. The twelfth assignment of error which complains of the court's

refusal to instruct a verdict in appellant's favor is overruled, because the pleadings and evidence made a case for the jury to determine.

There is no error in the judgment and it is affirmed.

### ON MOTION FOR REHEARING.

As it is urged in this motion the evidence is not sufficient to sustain the finding that appellant was engaged with the railroad companies in operating the car from which appellee fell, and shared in the profits of the business, we will recite more at length the facts upon which we based such finding. It is to the effect that appellant has numerous patented cars, which it "parks" in different cities. These are refrigerator cars and it maintains repair tracks for them in Los Angeles, California, and elsewhere. Railroads do use those cars, but can only do so by paying mileage. If the car stands still no mileage is paid, and, therefore, Continental Fruit Express has agents at icing points who notify it of the arrival and departure of cars, and it also employs men who travel around and "hustle" the cars along; sometimes it sends men with the cars. The railroads pay the mileage, and the mileage on this particular car was paid to appellant. Refrigerator cars must be iced, and there is a profit in this icing; it maintains icing points, employs men to ice the cars and gets the profit for it. Its cars are operated all over the United States, and it settles claims for damages to fruit caused by insufficient icing. It pays for repairs on the cars; and, according to one witness, the cars are loaded and shipped by appellant and routed by their own agents.

Again, appellant complains of our finding that fastening the handhold with a lag-screw instead of a nut and bolt was negligence, the wood around the lag-screw being rotten, rendering the fastening thereby of the handhold defective and insecure, and covered with paint, so that the defect was concealed and could not be discovered by the railroad company, and that such defect existed when the appellant delivered the car to the railroad company to be used in carrying on the business in which it and the railroad companies were engaged, and appellant knew or was charged with knowledge thereof. The contention is that the jury could not have found, under the charge, from the evidence that the construction with a lag-screw was negligence. Let us see. Schouroup, rip-track foreman, testifies: "The outside layer of a box car is composed of material $7/8$ inch thick—planking; it is nailed to the belt rails and side sills, side pieces and braces, what you might call studding. The lining of a box car is composed of $1/2$ by 6-inch material, which comes up 3 or 4 feet from the floor. Handholds are attached with lag-screws and with nuts and bolts. When a bolt and nut is used it is put in from the inside of the car through the grab iron, and then the nut is put on; with a large headed bolt they do not use a washer; with this size (exhibiting it) they do. The purpose of the washer is to keep the head from pulling through the wood. The bolt and nut is the safer method of attaching handholds, because there is more wood to decay before this will pull through than in using the lag-screw—the lag-screw will pull out with the least rottening. Bolts go through the siding and through the lining; lag-screws only

go through the siding—sometimes a small board is put inside the siding to hold it firm. To put in a lag-screw, you bore a hole 1-16 of an inch smaller than the screw, then drive in the screw two-thirds, then screw in with a wrench; lots of times they are driven clear in. In January, 1905, railroads were using about half and half of screws and bolts. I have seen cars come in with lag-screws pulled out, but in several years' experience, have never seen one come in with nut and bolt pulled out."

Leas testified: "The car the handhold pulled out of was Continental Fruit Express No. 10216, and it had been freshly painted. A lag-screw is driven in the car, except maybe a final twist or two with a wrench. A nut and bolt is put through, the nut put on and then the threads hammered so the nut won't come off. The washer goes on the inside the car. The nut and bolt is the safer. If the wood rotted immediately around the threads of a lag-screw, it would pull out; with the nut and bolt it would have to rot enough to let the washer through."

Kannary, conductor, testified: "The lag-screw pulled out on the east side; the wood must have been rotten—it was rotten. The car was a bright looking car, freshly painted."

Lynch, yardmaster at Santa Rosa, testified: "The lag-screw pulled out, the wood around it was rotten. The car had been freshly painted. In January, 1905, the latest construction was with the nut and bolt; that is the safer—there is no chance for it to pull out. I think they were using about half and half of bolts and lag-screws." R. Willott testified: "In January, 1905, the latest construction was with nut and bolt; they are the safer."

The issue of whether the use of the lag-screws was negligence was submitted to the jury, and by their verdict they found that it was.

That the Master Car Builders' Association authorized the use of lag-screws in construction of cars, does not show as a matter of law that it was not negligence to use them as they were used on the car from which appellee fell. Not even a court can ordinarily take from a jury and decide a question of negligence when there is any evidence reasonably tending to show the act of negligence charged; and for a stronger reason no association can by its usage or authorization preclude the jury from determining such a question. Such usage or authorization may be, and often is, evidence tending to negative the charge of negligence; but the jury must determine from it in connection with other evidence whether the act charged was negligence.

Again, it is contended that there was no evidence that the car was rotten when it was received by the railroad. No other conclusion than that the part of the car from which the lag-screw pulled out was rotten at that time, can be deduced from the evidence .

Other questions presented by the motion are sufficiently discussed in the original opinion. The motion is overruled.

*Affirmed.*

Writ of error refused.