Don D. ROBEY, Appellant,

v.

SUN RECORD COMPANY, Inc.,
Appellee.

No. 16197.

United States Court of Appeals
Fifth Circuit.

March 21, 1957.

Rehearing Denied April 25, 1957.

Joel W. Cook, Houston, Tex., Merrill & Scott by Sam R. Merrill, Houston, Tex., for appellant.

Morris Pepper, Houston, Tex., Grover N. McCormick, Memphis, Tenn., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Herman Parker, known as "Little Junior", was a blues and rhythm singer with a limited reputation in and around Memphis, Tennessee. On June 18, 1953, he and four others known as "The Blue Flames," a group of instrumental musicians, made a contract with Sun Record Company, Inc., a Tennessee corporation having its principal place of business in that State. The Blue Flames are not involved in the matters before us. By the contract Parker agreed to record eight phonograph record sides and more if Sun should require. The agreement gave Sun the exclusive services of Parker in the record making field and contained an express covenant that, during the life of the agreement, he would not record for anyone else. The contract was for the period of a year, and Sun had the option to extend the term for an additional year. The renewal option was exercised. Four records (eight record sides) were made. The first of these, with "Feelin' Good" on one side and "Fussin' and Fightin' Blues" on the other, was released on July 18, 1953, and soon became listed as one of the top blues and rhythm records in popularity and sales.

On September 4, 1953, the appellant, Robey, a resident of Texas, entered into a contract with Parker. It had, in substance, the same terms as Parker's prior contract with Sun except that the amount which Parker was to receive for his services was somewhat more and the term was for a longer period. In November of 1953 Sun released the second of the Parker records and its initial sales were good. Sun did not then know but soon thereafter learned of the contract between Parker and Robey. On December 3, 1953, Sun advised Robey that Parker was under contract to it. Robey was

then making or preparing to make the first of his Parker records. He declined to recognize the contract of Parker with Sun and thereafter made and released several Parker records. Sun brought suit in the United States District Court against Robey for wrongful interference with the contractual relationship between Parker and Sun and for wrongfully inducing the breach by Parker of his contract with Sun. The case was tried without a jury, findings of fact and conclusions of law were made, and judgment was entered in favor of Sun and against Robey for $17,500.00 actual damages. Exemplary damages were denied. A motion was made to set aside the judgment, for a new trial, and to amend the findings of fact. After denial of the motion this appeal was brought.

The contentions of the appellant, Robey, are (a) that the findings of the trial court, essential to its judgment, are unsupported by, or at least contrary to, the great weight of the evidence, (b) that the court erroneously awarded damages for anticipated profits which were speculative and conjectural both as to existence and amount, (c) that the trial court's failure to find the formulae by which the $17,500.00 award was settled upon is a procedural error in violation of the requirement of specific fact findings, (d) that the introduction of trade journals to prove the facts stated therein was error, (e) that the undisputed evidence shows that appellee failed to mitigate its damages, and (f) that the contract between Sun Record Co., Inc. and Parker was not valid and no liability existed for inducing a breach thereof.

This is a typical case calling for the application of the rule that recovery may be had for the wrongful procurement of a breach of contract by one not a party to it. The doctrine has roots in the medieval Ordinance of Labourers, 1349, 23 Edw. III Ch. 1. The leading English case and the one from which our present jurisprudence stems is Lumley v. Gye, 1853, 2 El. & Bl. 216, 118 Eng.Rep. 749, 1 Eng.Rul.Cas. 707. In Texas the rule was introduced in 1903 by Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962, 97 Am.St.Rep. 914, where Lumley v. Gye and a number of other cases are reviewed. The rule was announced that a person who induces a party to a contract to break it, intending thereby to injure another person or get a benefit for himself, commits an actionable wrong. From Temperton v. Russell, 1893, 1 Q. B. Div. 715, the Supreme Court of Texas quoted with approval the following, "I presume that the principle is this, viz., that the contract confers certain rights on the person with whom it is made, and not only binds the parties to it by the obligation entered into, but also imposes on all the world the duty of respecting that contractual obligation". The courts of Texas have applied the rule in many circumstances. 25 Tex.Jur., 31 et seq., Interference § 2.

The trial court found:

"Under date of June 18, 1953, the plaintiff Sun Record Company, Inc., of Memphis, Tennessee, entered into a contract with Herman Parker (together with certain other individuals, of no materiality here) which is in evidence and to which reference is made. Among other things, the contract provided for the exclusive services of Parker for the purpose of making phonograph records, and contained an express negative covenant to the effect that Parker would not perform (for the purpose of making phonograph records) for any other person, firm or corporation during the period of such contract. The contractual period was for one year, renewable for a second year at plaintiff's option. The necessary notice to exercise such option was given by the plaintiff April 30, 1954.

"At the time of such contract, Parker enjoyed a very limited reputation in and around Memphis. He was unknown as a recording artist or in the recording field. Due in large part to the recognition of certain talent in Parker, and training

which Parker received from and under plaintiff, and as a result of the advertising which plaintiff provided, the first record which Parker made for plaintiff under its contract above mentioned met immediately with a high degree of success and, for a while at least, was among the top few records in the 'Blues and Rhythm' field in popularity and number of sales throughout the country. This record was released July 18, 1953.

"On September 4, 1953, the defendant Robey, signing as 'Duke Records by Don D. Robey, President,' entered into a contract with Parker providing for the making of phonograph records. The contract is in evidence and is referred to. In most particulars, it is similar to the earlier contract which Parker had with plaintiff. It provides a slightly higher remuneration for the musician and was to extend for a period of three years. The execution of this contract was not announced to the trade until a number of weeks thereafter.

"I find that at the time of making the contract with Parker, the defendant Robey knew of Parker's prior contract with plaintiff, and from well recognized practices and customs in the industry, he knew that in all reasonable probability such contract contained an express provision for the exclusive use of Parker's Services by plaintiff and a negative covenant that Parker would not make records for anyone else. Despite this knowledge, *before* the contract was signed with Parker, the defendant Robey made no effort, through plaintiff or any other source to ascertain the true facts in this regard. In fact, he was anxious to conceal from plaintiff his dealings with Parker. *After* the contract was entered into, and before incurring expense thereunder, Robey made no inquiry other than to 'clear' his contract with Parker with the musi-

cians' union. This 'clearance' meant (a) that Parker was in good standing with the union, (b) that Robey's business was affiliated with the union, and (c) that no prior contract for Parker's services was on file *with the union.*

"Without knowledge of defendant's contract with Parker, plaintiff released a second Parker record in November, 1953. This record met with considerable popularity, although not to the extent of the first.

"Defendant admittedly had actual knowledge of plaintiff's contract with Parker, on December 2 or December 3, 1953, by means of long distance telephone conversation with the president of the plaintiff corporation and with its attorney. At the time of receiving such phone call, the defendant Robey was in the process or had made definite arrangements looking toward the recording of his first record by Parker. As he had incurred an expense of several hundred dollars in connection therewith, and because of his contention that plaintiff's contract was invalid and unenforceable because plaintiff was not affiliated with the musicians' union, defendant declined to recognize any exclusive right of plaintiff to Parker's services, and proceeded to make and release Parker's records during the next several months.

"Defendant's contracting with Parker when he either had actual knowledge or was chargeable with knowledge of plaintiff's contract and the terms thereof, and his recording and releasing of Parker's records under his own contract, was done deliberately and willfully, with knowledge of plaintiff's rights, and was done purely for commercial and competitive purposes.

"By reason of the announcement through trade publications and otherwise of the fact that the defendant had Parker under exclusive contract, the sales by plaintiff of

Parker's records previously released were adversely affected. Plaintiff considered it inadvisable thereafter to release other records that Parker had made for plaintiff prior to his contract with the defendant. Parker never offered to make further records for plaintiff after his contract with the defendant. By reason of its inability further to make the number of records with Parker, as permitted under its contract with him, and the curtailment of sales of those previously released, plaintiff has suffered actual damage in the amount of $17,500."

■■ We need not indulge in an extended review of the testimony on which the findings were based, testimony which in several material respects was in sharp conflict. Our duty is fixed by the rule which provides that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. Although Robey contends otherwise, the findings that Robey employed Parker with knowledge of and in wilful disregard of Parker's contract with Sun are supported by substantial evidence, they are not against the weight of the evidence or induced by an erroneous view of the law. We are not persuaded that a mistake has been committed or that the findings do not reflect the truth and right of the case. 2 Barron and Holtzoff, Federal Practice and Procedure 833, § 1133; Western Cottonoil Co. v. Hodges, 5 Cir. 1955, 218 F.2d 158. Robey urges that it is not shown that he induced Parker to breach his contract with Sun, and that proof of his knowledge is not enough. The beliefs of Robey that Parker would breach or had breached his contract with Sun or his belief that such contract was without validity because not approved by a union, if such beliefs were entertained, would not absolve Robey from his tortious act. Robey's intentional making of a contract with Parker and proceeding to carry out such contract, knowing that the performance by Parker of the contract with him would be contrary to and in violation of Parker's contractual duty to Sun, is enough to show the inducement of the breach. Meyer v. Washington Times Co., 1935, 64 App.D.C. 218, 76 F.2d 988, certiorari denied 295 U.S. 734, 55 S.Ct. 646, 79 L.Ed. 1682. Cf. Thomason v. Sparkman, Tex.Civ.App. 55 S.W.2d 871; Westinghouse Electric & Mfg. Co. v. Diamond State Fibre Co., D.C.Del.1920, 268 F. 121.

■■ A specific objection is made to the receipt in evidence of trade journals. These were offered and received for the purpose of showing that the record of Little Junior had a degree of public reception. For this limited purpose the admission of the journals was proper. St. Louis I. M. & S. Ry. Co. v. Gunter, 39 Tex.Civ.App. 129, 86 S.W. 938; Leas v. Continental Fruit Express, 45 Tex. Civ.App. 162, 99 S.W. 859; Continental Fruit Express v. Leas, 50 Tex.Civ.App. 584, 110 S.W. 129; Western Union Tel. Co. v. Gilliland, 61 Tex.Civ.App. 185, 130 S.W. 212; Western Union Tel. Co. v. Eckhardt, Tex.Civ.App., 2 S.W.2d 505. In any event there was other evidence to the same facts so that if it were error to admit these journals it would be harmless and it is to be presumed that the court disregarded all incompetent evidence. Thompson v. Baltimore & Ohio Railroad Co., 8 Cir., 1946, 155 F.2d 767.

■■ It is contended by Robey that the award of damages is conjectural, uncertain and speculative. In determining the amount of damages for the interference with a contract for the personal services of a musical artist, and we will not deny those who had and those who sought the right to his services the privilege of regarding him as such, there is not any fixed yardstick by which the award of damages is to be measured. There was a heavy sale of the first record made by Parker for Sun. The sales of the second record started well but declined rapidly. This is urged by Robey as showing that Parker's career was

coming to a close and the interference by Robey, if any there was, did not result in damages. But, as Sun contends, it may be that the heavy sale of the first record might have been attributable to the skillful guidance of Sun as much as to the talents of Parker. It was Sun's theory that the sales of the second record declined because of the knowledge in the trade that Parker had made a contract with Robey. This was a question for the trial court's determination.

Robey insists that Sun could have and should have minimized its damages by releasing the other records which Parker had cut for it. Sun, however, was of the belief that it could not sell Parker's records in profitable quantities after he had been induced to deflect to Robey. These are matters which were urged before the trial judge. They were matters for his determination. On review we are not to retry the case or to fix the amount of damages according to our notions as to the value of the injury which has been inflicted and sustained. Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486. "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery". Straus v. Victor Talking Mach. Co., 2 Cir., 1924, 297 F. 791, 802; Story Parchment Co. v. Paterson Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Bigelow v. R. K. O. Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, rehearing denied 327 U.S. 817, 66 S.Ct. 815, 90 L.Ed. 1040. Though damages cannot be ascertained by a fixed rule and must be based upon estimates and opinion, it does not follow that no damages should be allowed or that the award should be merely nominal. Story Parchment Co. v. Paterson Co., supra. We are asked to require the district judge to specify the method by which the calculation of damages was made. The district judge was not required to undertake such a task. Our duty is to determine whether the finding as to the amount of damage was clearly erroneous.

Sanders v. Leech, supra. We are of the opinion that the finding was proper.

It is asserted by Robey that the contract between Sun and Parker was void for want of consideration, had been induced by fraud and had been repudiated by Parker. There was a valid consideration for the making of the contract and further consideration passed when Parker made recordings and received royalties. Parker was not relieved from his obligation to Sun merely because Sun had the option, rather than being obligated, to use Parker in making other recordings during the contract period. "A contract may be so made as to be optional on one of the parties and obligatory on the other, or obligatory at the election of one of them; and mutuality of obligation is not essential where there is any consideration for a contract other than mutual promises, as in the case of options and other unilateral contracts, which are supported by a consideration." 10 Tex.Jur. 157, Contracts, § 92; Guaranty Mortgage Co. v. Nowell, Tex.Civ.App., 72 S.W.2d 354; Guaranty Building & Loan Co. v. Nowell, Tex.Civ. App., 76 S.W.2d 830.

Parker testified that he asked Phillips, President of Sun, if he was a member of the union and received an affirmative reply. In the cross-examination of Phillips were the following questions and answers:

"Q. Had you asked any of them [Parker and the Blue Flames] if they belonged to the American Federation of Musicians? A. No, I didn't.

"Q. You didn't tell them that you did belong to it? A. No, I didn't, I don't remember specifically whether I did or not, but I would say offhand that I did not.

"Q. That you didn't? A. That's right."

We do not think this by any means establishes any misrepresentations to Parker by Phillips or that anything said or unsaid about the union influenced Parker to enter into the contract with

Sun. But whether so or not, Robey, as an intermeddler, cannot avail himself of any such defense even though Parker might have asserted it in an action against him for breach of contract. Citing many authorities to support its statement, the Texas Court of Civil Appeals has said:

"In our opinion the correct rule is that if a person with knowledge and fraudulent intent induces a party to breach his contract with another, such person is liable in damages though the breached contract may be unenforceable as between the contracting parties because of the statute of frauds". Yarber v. Iglehart, Tex.Civ.App., 264 S.W.2d 474, 476.

Such rule is also applicable here.

As to the contention that Parker had repudiated the Sun contract before Robey dealt with him, it is enough to say that, upon more than ample evidence the district court found otherwise and correctly so.

Other points urged by Robey are without merit and need not be discussed. We find no error and the judgment below is

Affirmed.