MARSHALL MILL & ELEVATOR CO. v. SCHARNBERG. (No. 1686.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 30, 1916.)

1. MASTER AND SERVANT ⊙⇒351—EMPLOYERS' LIABILITY ACT—CONSTRUCTION.

Employers' Liability Act (Acts 33d Leg. c. 179) pt. 3, §§ 6, 9–11, provides that the Employers' Insurance Association shall not issue policies until not less than 50 employers with not less than 2,000 employés have subscribed to the plan, and not until specified conditions have been complied with, or when the number of subscribers falls below 50 or the number of the employés below 2,000. Part 4, § 2, provides that any insurance company, lawfully transacting liability or accident business within the state, shall have the same right to insure the liability to pay the compensation provided for by part 1, and that when such company issues a policy conditioned to pay such

compensation the holder of such policy shall be regarded as a subscriber so far as applicable under the act. *Held*, that the last provision brings within the operation of the act not only every employer entitled to its benefits who has not become a subscriber to its plan, but also every such employer who has procured insurance against his liability as such and complying with the requirements as to notice to his employés, etc., whether the insurance procured is by the association created by the act or by some other insurance company, so that the operation of the act is not dependent upon whether the employer elects to become a subscriber to the association or not, nor upon the number of employers and their employés who did or not.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &=351.]

2. APPEAL AND ERROR &=200—IMPROPER REMARK IN ARGUMENT ON EXCEPTION TO PETITION—WAIVER.

In a servant's action for injuries, where, in argument on exception to the petition, in the presence and hearing of the jurors afterwards chosen to try the case, plaintiff's counsel stated to the court that defendant had elected to take out indemnity insurance to protect himself from loss which was of an entirely different character from the insurance provided for in the Employers' Liability Act, but defendant accepted the jurors to try the case without protest of any kind, defendant could not thereafter complain of the argument.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. &=200.]

3. NEW TRIAL &=44(3)—MOTION—MISCONDUCT OF JURY—ABUSE OF DISCRETION.

In a servant's action for injuries, where defendant claimed that verdict for plaintiff for $4,500 resulted from the jurors' knowledge that defendant carried insurance, and that plaintiff's attorneys would be entitled to part of the sum found for him, but the jurors who heard the discussion in the jury room on the point testified that they were not influenced to find in plaintiff's favor a greater sum than they otherwise would have found, the trial court did not abuse his discretion in denying motion for new trial on the ground of the jury's misconduct.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 82–84; Dec. Dig. &=44(3).]

4. DAMAGES &=132(8)—PERSONAL INJURIES—EXCESSIVE VERDICT.

In an action for injuries by a servant, who earned $75 per month, and whose fall bruised his shoulder, knocked a couple of holes in his head, broke his arm, and stiffened his fingers, injuries which were likely to be permanent and which disabled his hand, so that he earned nothing since the injury, verdict for $4,500 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 379; Dec. Dig. &=132(8).]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Suit by H. W. Scharnberg against the Marshall Mill & Elevator Company. From a judgment for plaintiff, defendant appeals. Judgment affirmed.

Appellee was employed by appellant to assist in the operation of its mill and elevator plant. It became necessary to repair a defect in the head of the elevator shaft. At the command of appellant's superintendent, one Wheat, in charge of the operation of the

plant, appellee went with him to the top of the shaft, in the attic of the building, to assist in removing the cap (a box about 6 feet long, 1½ feet wide, and 3 feet deep) of the shaft, so the defect could be repaired. Without stopping the operation of the elevator, Wheat and appellee removed the cap and repaired the defect. There was no floor around the shaft where they were at work, and they had to stand on joists 2 by 4 or 4 by 6 inches in size. In attempting to replace the cap, it was, it seems, hit by buckets revolving in the shaft, which caused appellee to lose his balance and fall 12 or 15 feet to the floor below. As a result of the fall appellee sustained serious and permanent injury to his person. Alleging negligence on the part of appellant as the cause of the injury, appellee sued and recovered the judgment of $4,500, for which the appeal is prosecuted. On special issues submitted to them the jury found, among other things, which need not be set out: (1) That appellant was guilty of negligence in directing appellee to assist in removing and replacing the cap under the circumstances shown by the testimony; (2) that appellee was injured as the result of such negligence; (3) that appellee was not himself guilty of negligence; and (4) that he was damaged in the sum of $4,500.

Beard & Davidson and Hobart Key, all of Marshall, for appellant. Bibb & Bibb, F. M. Scott, and Brown & Hall, all of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). The provisions of Act April 16, 1913 (Gen. Laws, p. 429), known as the "Employers' Liability Law," do not apply—

"to actions to recover damages for the personal injuries or for death resulting from personal injuries sustained by domestic servants, farm laborers, nor to the employés of any person, firm or corporation operating any railway as a common carrier, nor to laborers engaged in working for a cotton gin, nor to employés of any person, firm or corporation having in his or their employ not more than five employés."

Other employers of labor than those specified may become "subscribers" to its plan or not, as they may choose. If they do not become subscribers "the consequence attached to their not consenting to it," said the Supreme Court in Middleton v. Texas Power & Light Co., 185 S. W. 559,

"is the denial of the right, existing in common-law actions, to interpose the common-law defenses of fellow servant, assumed risk, and contributory negligence in suits for the recovery of damages for personal injuries suffered by their employés in the course of their employment."

[1] In his petition appellee alleged that appellant had more than five employés assisting in the operation of its mill and elevator, and was not a "subscriber" within the meaning of the act. The purpose of the allegation was to show that appellant was not

entitled to assert against the recovery sought either of the common-law defenses specified by the Supreme Court. Appellant excepted to the allegation on the ground that the act was unconstitutional, and therefore could not operate to deprive it of such defenses. In its brief appellant concedes that all the reasons urged by it in support of its contention were held to be invalid in the Middleton Case, except one, to wit, that the Legislature could not—

"delegate to some outside individual or corporation the right or power to put into effect or suspend the operation of the law."

The contention that the Legislature undertook to do that is based on the fact that employers entitled were not required to become subscribers to the insurance association created by the act, and to provisions therein that that association should not issue policies until not less than 50 employers having not less than 2,000 employés had subscribed to the plan, not then until specified conditions had been complied with; nor when the number of subscribers fell below 50 or the number of their employés below 2,000. Sections 6, 9, 10, and 11, pt. 3. But for the provision made in section 2, pt. 4, of the act the contention might be a sound one and require a determination of a question as to whether the Legislature could delegate such power or not. Part of section 2 referred to is as follows:

"Any insurance company, which term shall include mutual and reciprocal insurance companies lawfully transacting a liability or accident business within this state, shall have the same right to insure the liability to pay the compensation provided for by part 1 of this act, and when such company issues a policy conditioned to pay such compensation the holder of such policy shall be regarded as a subscriber so far as applicable under this act."

The effect, as we understand it, of this provision is to bring within the operation of the act not only every employer entitled to its benefits who has not become a subscriber to its plan, but also every such employer who has, by procuring insurance against his liability as such and complying with the requirements as to notice to his employés, etc., whether the insurance procured is by the association created by the act or by some other insurance company. If this is true, then the operation of the act is not dependent upon whether the employer elects to become a subscriber to the association or not, nor upon the number of employers and their employés who do or not. It is in force, and the employer who has complied with its requirements is entitled to its benefits, when and so long as he complies therewith, without reference to whether other employers entitled to do so have elected to accept its benefits or not.

[2] In the argument on the exception to the petition, above referred to, had in the presence and hearing of jurors for the week afterwards chosen to try the cause, appellee's counsel stated to the court that appellant—

"had elected to take out indemnity insurance to protect themselves from loss, which was of an entirely different character from the insurance provided for in the Employers' Liability Act."

The statement was excepted to, on the ground that it was prejudicial to appellant's rights to make it in the presence of said jurors. In view of the fact that appellant was insisting in its answer to the suit, that it was entitled to the benefits of the act, if constitutional, it is not clear that the statement to the court was improper; but if it was, it is clear appellant should not be heard to complain of it after accepting said jurors to try the cause, without protest of any kind. Clark v. Elmendorf, 78 S. W. 538.

[3] The refusal of the court to grant appellant a new trial on the ground that the jury was guilty of misconduct to its prejudice is assigned as error. The contention is that it appeared for evidence heard by the court on the motion that the jury were induced to find in appellee's favor for a greater sum than they otherwise would have found, because they assumed as facts, which influenced their verdict, that appellant carried insurance against the liability established against it, and that appellee's attorneys would be entitled to a part of the sum which might be found in his favor. Several of the jurors testified that while they were deliberating suggestions that appellant was protected by insurance it carried and that appellee's lawyers would share in the sum awarded him were discussed, and one of them testified that he thought the discussion caused him to be more liberal in rendering his verdict. On cross-examination, however, this juror further testified:

"When I found this verdict for $4,500, I did so because I thought the plaintiff was entitled to it, irrespective of anything else that might have been in the case. The insurance matter did not influence me in finding for plaintiff. I was in his favor before it was mentioned. In the end I based my verdict on what I thought the man was entitled to under the facts of the case."

All the other jurors who heard the discussion and testified said they were not thereby influenced to find in appellee's favor a greater sum than they otherwise would have found.

It has been held that under the provisions of the statute (article 2021, Vernon's Statute) the burden rests—

"upon the party seeking to impeach or discredit the verdict, and the judgment of the court on the testimony adduced must have the same force and effect as would his judgment in any other case on the facts; that is, if there is evidence to support it, it cannot be disturbed by an appellate court. The law places the discretion, as to sustaining or overruling the motion for a new trial on the grounds specified in the statute, in the trial court; and appellate courts have no authority to disturb the ruling thereon, unless it is apparent that there has been an abuse of such discretion." San Antonio Traction Co. v. Cassanova, 154 S. W. 1190.

It is not apparent to us that the trial court abused the discretion he possessed when he denied the motion, and therefore we overrule the assignment. Railway Co. v. Blalack, 128 S. W. 706; Railway Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Gulf States Telephone Co. v. Evetts, 188 S. W. 289.

[4] It is insisted that the verdict is excessive. But we think it cannot be so held as a matter of law. Testifying two years after he sustained the injuries complained of appellee said:

"My shoulder was bruised and a couple of holes knocked in my head. My shoulder still hurts now at the changes of the weather, and three fingers are stiff. I broke my right arm just above the first joint; the injury was received in January, 1914. I never had any trouble with my arms before the injury. It is getting weaker all the time now, and my fingers are getting stiffer all the time—the little finger and the next two fingers. I cannot close these fingers or grip anything with them. I have had a physician to treat my arm. These three fingers are shiny and colorless and are cold all the time, and haven't the feeling in them that I have in my other fingers. I cannot do any work to amount to anything with this hand. The other fingers on this hand are not as strong as they were before the injury. I have been trying to farm, but cannot hold a plow with this hand. I have a negro helping me most of the time. My inability to use this hand prevents me making money as a farmer or doing the work I used to do. At the time I was injured I was earning $75 per month, and since that time I haven't earned anything."

Other testimony indicated that the injury to appellee's arm and fingers was a permanent one.

Other contentions made in appellant's brief also are overruled.

It is believed there is no error in the judgment authorizing its reversal. Therefore it is affirmed.